NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| DANIEL AMAYA-REYNALDO,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>　　　　　Respondent. | No.　21-697<br><br>Agency No. A206-909-961<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 17, 2023[**]
Pasadena, California

Before:　PAEZ, MILLER, and VANDYKE, Circuit Judges.

　　Petitioner seeks review of a Board of Immigration Appeals (BIA) decision

dismissing the appeal of the denial by the Immigration Judge (IJ) of deferral of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

removal under the Convention Against Torture (CAT).  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

Petitioner is a native and citizen of El Salvador who entered the United States without authorization in 2005 and has resided here ever since.  In 2015, Petitioner applied for asylum and withholding, stating that he feared "extortion by the MS-13," that gangs target repatriates from the United States, and that he would be "a good candidate to be extorted."  His amended application added that he feared he would be persecuted and tortured by Salvadoran security forces "known to commit extrajudicial killings" and organized criminals, that the government there was unwilling to protect him, and that statistics and reports by human rights groups supported his fear of torture by corrupt Salvadoran officials.

At his 2018 immigration hearing, Petitioner further testified that he had once been beaten as a youth by gang members for refusing to smoke marijuana with them, but he had otherwise only experienced thefts, and he had never received a beating requiring medical treatment.  He recounted several events when family members had been extorted or harmed: his brother and mother had been extorted, his uncle had been "run over by a car" of gangsters, and two siblings had been beaten by gangsters.

The IJ first held that because Petitioner didn't contest that he had been convicted of a "particularly serious crime," he was ineligible for asylum or

withholding of removal.[1] Thus, the only eligible relief was deferral of removal under the CAT ("CAT Deferral").

The IJ denied CAT Deferral relief. The IJ reasoned that even if Petitioner was credible, he failed to show "it [was] more likely than not that [he] would be tortured as defined in the regulations much less by or at the instigation of or with the consent or acquiescence of a government official or other person acting in an official capacity." Harms suffered when Petitioner was a child—any beatings and thefts— and speculation that gang members may single him out for extortion as a repatriate did not rise to the level of torture, nor did the incidents suffered by his family (the hit-and-run killing of his uncle, extortion of his mother, and beatings suffered by siblings). To support his otherwise "generalized distrust of government authorities," Petitioner had provided anecdotal and documentary evidence regarding corruption, but the IJ found he had failed to show it was more likely than not he would suffer gang-related torture at the instigation, acquiescence, or consent of a government official. The IJ noted that Petitioner's own documentary evidence reported the Salvadoran government's "attempts to combat the influence and extent of the gang

---

[1] Petitioner was charged and convicted for possession of methamphetamine. Petitioner did not appeal the holding that he was thus ineligible for asylum or withholding of removal.

3

violence." The BIA dismissed Petitioner's appeal, which challenged the IJ's adverse credibility determination and denial of CAT Deferral relief.

Where, as here, the BIA issues its own decision, but "relies in part on the immigration judge's reasoning, we review both decisions." *Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016) (citation omitted). Questions of law are reviewed de novo, *Ali v. Holder*, 637 F.3d 1025, 1028–29 (9th Cir. 2011), but the agency's factual findings are reviewed for substantial evidence and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Thus, to reverse a finding of the agency under substantial evidence review, "we must find that the evidence not only *supports*" reversal, "but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). To qualify for CAT Deferral, an applicant bears the burden of showing "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. §§ 208.16(c)(2), 208.17. Even assuming that Petitioner testified credibly, his arguments to that end are unpersuasive.

*First*, he argues that the BIA treated the resolution of past torture as dispositive of the question of whether his fear of future torture was probable. But the BIA never determined that the absence of past torture foreclosed any claimed fear of future torture. On the contrary, the BIA clearly *did* address Petitioner's alleged fear of future torture: "[E]ven though gang members may have harmed members of his

4

family, he has presented a speculative claim that now, after residing in this country for more than a decade, it is more likely than not that he will be tortured upon his removal." Specifically, "even though corruption exists in some parts of El Salvador, [Petitioner] has not shown a clear probability that any future torture would be inflicted." Nor does Petitioner challenge the IJ's thorough analysis, which the BIA cited and relied on.

*Second*, Petitioner argues that the BIA erred in dismissing his appeal as speculative, because all claims of future torture are by nature speculative. But the BIA's use of the term "speculative" is not problematic: the agency and this court use that term, not in the general sense that all claims about the future are uncertain, but in the specific sense that the claim is not individualized or particularized in a manner that would aid in analyzing the probability of future torture. *See, e.g.*, *Xiao Fei Zheng v. Holder*, 644 F.3d 829, 835–36 (9th Cir. 2011). It is in that latter sense that the agency concluded Petitioner's evidence of future torture, when taken together, "does not show … that it is more likely than not that he would be tortured … were he now to return." Contrary to Petitioner's argument, the BIA applied the correct standard of proof.

*Third*, Petitioner argues that the BIA erred in dismissing his appeal for failure to establish that torture would be inflicted "with the requisite degree of state action," because it did not consider the state's "inaction, or 'willful blindness.'" The BIA

5

did, however, explicitly consider this factor: "[Petitioner] has not established … it is more likely than not he will be tortured by or at the instigation of or with the consent or *acquiescence (including 'willful blindness')* of a public official."  Given this clear ruling, Petitioner's argument fails.

**PETITION DENIED.**